IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SSM HEALTH CARE OF OKLAHOMA, INC., an Oklahoma Not For Profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHT HEALTH INSURANCE COMPANY, a Foreign Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 23-cv-00305-SLP<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

**I.   INTRODUCTION**

Plaintiff, SSM Health Care of Oklahoma, Inc. ("SSM"), is a healthcare provider based in Oklahoma City who operates healthcare facilities throughout Oklahoma. SSM provided over $15.6 million worth of medical services to members of Bright Health Insurance Company ("Bright") through medical service providers at its Oklahoma City, Shawnee, and Midwest City facilities. After facing business challenges and multiple investigations by state agencies across the United States, Bright withdrew from the Oklahoma market (and multiple other state markets) effective on December 31, 2022, while still owing SSM over $13 million in accounts payable for medical services provided to Bright members prior to December 31, 2022.

SSM filed a Complaint with this Court on April 10, 2023, arguing that though there is not an express contract between the two parties for these services, an implied contract was created through reasonable conduct by SSM in treating Bright's members in

1

SSM's facilities in the ordinary course of business upon their presentation to an SSM facility ("Complaint"). Dkt. No. 1. Accordingly, SSM pled counts of breach of implied contract relating to emergency services (Count 1), breach of implied contract relating to inpatient and outpatient services (Count 2), and quantum meruit (Count 3).

Bright filed a Motion to Dismiss all claims in SSM's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on May 11, 2023 ("Motion to Dismiss"). Dkt. No. 13. SSM's factual allegations exceed the standard for surviving a motion to dismiss, and Bright's arguments for dismissal as a matter of law are without merit. Accordingly, this Court should deny Bright's Motion to Dismiss.

## II. LEGAL STANDARD

### A. The Complaint Must Merely Contain Facts Demonstrating That Relief is Plausible.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citations omitted).

B.   **This Court Must Accept All Factual Allegations as True.**

The fundamental premise underlying any motion to dismiss is "the assumption that all allegations in the complaint are true[.]" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). Once the truth of the factual allegations in the complaint are assumed, the allegations need do no more than "raise a right to relief above the speculative level…." *Id.*; *see also Iqbal*, 550 U.S. at 554 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era[.] . . .) Moreover, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555.

Therefore, as this Circuit has explained, dismissal is appropriate only "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan County*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 550).

C.   **SSM Has Pled Factual Allegations Supporting Its Causes of Action**

Key allegations of the Complaint that support SSM's causes of action include:

- SSM is a health services provider who treated Bright members through medical services at its Oklahoma City, Shawnee, and Midwest City facilities. Complaint at ¶ 4.

- SSM provided services to patients in its emergency rooms, inpatient facilities, and outpatient facilities. Bright was listed as the insurance plan and financially responsible payor for the patients treated by SSM. Complaint at ¶¶ 6-7.

3

- Defendant Bright is licensed under the Affordable Care Act (ACA), to sell ACA exchange products in Oklahoma, and left the Oklahoma health insurance market effective December 31, 2022. Complaint at ¶ 5.

- Under federal law, a hospital has a statutory duty to provide emergency medical services to all individuals who present themselves at the emergency department needing such services without regard to the individual's ability to pay or his or her possession of insurance benefits. 42 U.S.C. §1395dd. Complaint at ¶ 23.

- The ACA, which became effective on March 23, 2010, imposes on insurers a legal obligation to cover emergency services provided at non-contracted hospitals. 42 U.S.C. § 300gg-19a. Complaint at ¶ 24.

- In conformance with its duties under federal law, SSM provided, at a reasonable rate, necessary emergency medical services to Bright's plan members who presented at an SSM facility requesting emergency care. Bright is therefore obligated to pay SSM for such services in the ordinary course of business. Complaint at ¶ 25.

- The ACA sets out "essential health benefits" that plans must cover, which include both inpatient and outpatient hospitalization services. 42 U.S.C. § 18022(b). Complaint at ¶ 29.

- SSM provided necessary inpatient and outpatient services to Bright members at a reasonable rate, which is conduct that obligates insurers to pay SSM for such services in the ordinary course of business. Complaint at ¶ 30.

- SSM has conferred a benefit upon Bright by providing valuable services to Bright members with a reasonable expectation of being compensated for those services at a reasonable value. Complaint at ¶ 36.

- SSM has been damaged in an amount according to proof at trial, plus applicable statutory interest. Compliant at ¶¶ 27, 33, and 40.

### III. LEGAL ARGUMENT

    **A. Plaintiff's Complaint Properly States a Claim Against the Defendant for Breach of Implied Contract for Counts 1 and 2.**

        **1. The Applicable Law**

The Oklahoma Supreme Court has recognized three contractual relationships: "(a) quasi contracts, which are commonly referred to as 'implied-in-law' or 'constructive' contracts: (b) implied-in-fact contract: (c) express contracts." *T & S Inv. Co. v. Coury*, 1979 OK 53, ¶ 5.

A party may allege an obligation under a quasi-contract, i.e., implied-in-law or constructive contract, where there is no actual contract. *T & S Inv. Co. v. Coury*, 1979 OK 53, ¶ 5, 593 P.2d 503, 504-05 (quoting *Berry v. Barbour*, 1954 OK 358, ¶ 22, 279 P.2d 335, 338). "Quasi contracts" or "implied-in-law" contracts are implied by law, rather than fact. *Id*. In comparison, implied-in-fact contracts are manifested by the parties' conduct, rather than law. Oklahoma state law defines an implied contract as "one, the existence and terms of which are manifested by conduct." 15 Okla. Stat. § 133.

        **2. The Complaint Properly States a Claim for Breach of an Implied-in Law Contract – Count 1.**

SSM's allegations for breach of an implied-in-law contract are sufficient to withstand a Motion to Dismiss. Implied-in-law contracts "are a class of obligations imposed or created by law without regard to the assent of the party bound. A party's intention is disregarded. The duty is drawn from the facts, and the obligation is imposed as a matter of law or natural equity." *Shebester v. Triple Crown Insurers*, 1992 OK 20, 826 P.2d 603, 610 (Okla. 1992).

Bright contends that SSM's claimed legal duty is "imposed by the [Affordable Care Act], which requires insurers to cover emergency services provided at out-of-network hospitals." Motion to Dismiss at 6.

First, Bright's statement mischaracterizes SSM's Complaint. Bright references to the ACA while ignoring SSM's allegation under the Emergency Medical Treatment and Labor Act (EMTALA) at 42 U.S.C. § 1395dd. *See* Motion to Dismiss at 6; Complaint at ¶¶ 23-25. Together these two provisions set forth the foundational law for SSM's implied-in-law contract claim. Complaint at ¶ 25. EMTALA requires SSM to provide examination and stabilization treatment to individuals who present themselves to SSM's emergency rooms, including Bright's members. *See* 42 U.S.C. §§ 1395dd(a)-(b). These provisions of EMTALA are well known in the healthcare industry, and at a minimum should be known by insurers such as Bright.

Second, as Bright recognizes, the ACA imposes a legal duty on insurers to cover emergency services provided at non-contracted hospitals. 42 U.S.C. § 300gg-19a. When taken together with the EMTALA requirement that hospitals provide emergency care without regard to the patient's ability to pay, the laws create an implied-in-law contract between provider and insurer – here SSM and Bright – for the hospital to provide the emergency services and the insurer to pay for those services. Thus, SSM has asserted an implied-in-law contract because, as alleged in the Complaint, Bright has not covered, i.e. paid for, emergency services provided to its members by SSM, an out-of-network hospital.

In a very similar case from Tennessee, the Court found that a contract implied-in-law exists when a provider is forced to treat a patient under EMTALA and the insurer is required to pay for the emergency services of its enrollees. *River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43, 59 (Tenn.Ct.App. 2003). The plaintiff, a hospital who continued to provide emergency services to enrollees of a TennCare managed care organization (MCO) it formerly had an in-network contract with, sought recovery against the defendant MCO for its full standard rates after the MCO paid the plaintiff hospital the participating providers' rate. *Id*. at 46. The trial court initially rejected the plaintiff hospital's claim for unjust enrichment[1], but the plaintiff hospital made a motion for additional findings based on the theory that federal law compelled the hospital to treat patients who present themselves at the emergency room. *Id*. at 52. Upon hearing additional evidence, the trial court entered a new order finding that the defendant MCO had been unjustly enriched by receiving services provided to its enrollees by the plaintiff hospital who had been compelled to treat the enrollees under federal law. *Id*. at 52-53. The Court affirmed the trial court's reasoning and noted:

> When presented with an emergency patient, either through the emergency room or through admission by a [primary care provider], under the EMTALA, [the hospital] has no choice except to treat the patient, regardless of whether the patient is a [MCO] enrollee. Likewise, under its risk agreement with the State, [the MCO] is required to pay for emergency medical services for its enrollees, whether the services are provided by an in-network provider or by an out-of-network provider such as [the hospital]… Thus, while neither of these parties may have wanted to deal with the other, both were left with no choice. Under these circumstances, we must find a

---

[1] The Court noted that under Tennessee law, "unjust enrichment" and "contract implied in law" are virtually interchangeable. *Id*. at 59 (citing *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (Tenn. 1966)).

>contract implied in law, without the assent of either party, on the basis that it is 'dictated by reason and justice.

*Id*. at 59-60 (quoting *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn.Ct.App. 1997).

Here, as previously explained, the ACA required Bright to pay for the emergency medical services of its enrollees and EMTALA required SSM to provide emergency care to those same enrollees upon their presentation to the hospital's emergency department regardless of insurance status. As a result, an implied-in-law contract was formed between SSM and Bright. These facts are sufficient for purposes of pleading and further argument, such as the amount of compensation owed, should be reserved for later stages of litigation. *See* Twombly, 550 U.S. at 550; Davis, 554 F.3d at 1256.

### 3. The Complaint Properly States a Claim for Breach of an Implied-in-Fact Contract – Count 2.

Under Oklahoma Supreme Court case law, courts should consider four factors when determining whether an implied-in-fact contract exists: "(a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract." *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 10, 10 P.3d 888, 891 (Okla. 2000). As the Court in *Dixon* explained, "[w]hat distinguishes an implied contract from an express contract is the mode of its proof. The former is deduced from disclosed circumstances as well as the parties' relations and its terms reflect the agreement which in fairness ought to have been made." *Id.*

8

Here, SSM has pled sufficient facts to state a plausible claim for breach of an implied-in-fact contract. Specifically, SSM pled that Bright entered the Oklahoma insurance market and "SSM provided necessary inpatient and outpatient services to Bright members at a reasonable rate, which is conduct that obligates insurers to pay SSM for such services in the ordinary course of business." Complaint at ¶ 30. Additionally, "SSM provided, at a reasonable rate, necessary emergency medical services to Bright's plan members who presented at an SSM facility requesting emergency care. Bright is therefore obligated to pay SSM for such services in the ordinary course of business." Complaint at ¶ 25. Thus, the Complaint alleges conduct by both Bright and SSM evidencing an implied-in-fact contract concerning payment for the relevant patient encounters. Specifically, Bright entered the health insurance market and provided health insurance plans to its members in the Oklahoma market with the knowledge that some of these members would seek treatment in out-of-network facilities. SSM, a hospital system, provided medical services to Bright's members in accordance with its legal obligation to treat patients in certain circumstances. SSM provided these medical services to Bright's members upon a good faith reliance that Bright, as the insurer, would pay a reasonable value for the services rendered.

Taken on their face, these factual allegations give rise to a plausible claim for relief. Furthermore, any dispute about the weighing of the aforementioned factors is reserved for the trier of fact and is inappropriate at this stage of litigation. Therefore, this Court should deny Bright's Motion to Dismiss SSM's breach of implied-in-fact contract claim under Rule 12(b)(6).

9

### B. Plaintiff's Complaint Properly States a Claim Against Defendant for Quantum Meruit – Count 3.

Oklahoma law recognizes a legal action for the doctrine of quantum meruit. "[T]he common law doctrine of 'quantum meruit' ... is founded on a Latin phrase meaning, 'as much as he deserves,' and provides for 'a legal action grounded on a promise that the defendant would pay to the plaintiff [for his services] as much as he should deserve.'" *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (quoting *Martin v. Buckman*, 1994 OK CIV APP 89, ¶ 38, 883 P.2d 185, 193–94). Quantum meruit is a type of quasi-contractual claim.

Bright cites to cases outside of Oklahoma suggesting that providers cannot bring quasi-contractual claims, such as unjust enrichment[2] or quantum meruit, against insurance companies based on services rendered to insureds. First, none of the cases cited by Bright are binding on this Court. Second, many of these cases are easily distinguishable, such as one involving a dispute over whether a global fee applied to payment for services in physician's office (Motion to Dismiss at 8 (citing *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011)), or another involving alleged overpayments to a substance abuse treatment facility (*Id.* (citing *MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *10 (D. Conn. May 7, 2019))). Third, other similarly situated courts have come to the exact opposite conclusion - confirming that providers **can** bring quantum

---

[2] Oklahoma courts view quantum meruit as a closely related theory of recovery to unjust enrichment. *See Am. Automated Theatres, Inc. v. Hudgins, Thompson, Ball & Assocs., Inc.*, 516 P.2d 565, 568 (Okla. Civ. App. 1973) (Brightmire, P.J. concurring).

meruit claims against insurers who fail to pay for the valuable services provided to their insureds based on the benefit provided to the insurer. These cases, as discussed below, are more analogous to the facts here, and the opinions are more soundly reasoned and therefore should be followed by this Court.

For example, a district judge in the Western District of Texas found that an insurance company benefited by having its obligations to its plan members discharged. *El Paso Healthcare Sys., Ltd. v. Molina Healthcare of N.M., Inc.*, 683 F.Supp.2d 454, 461 (W.D. Tex. 2010). In *El Paso Healthcare*, a health system with two Texas hospitals sued an insurer serving under contract for New Mexico Medicaid for allegedly underpaying the health system for outpatient emergency services. *Id*. at 456. Responding to contentions by the insurer that the health system could not satisfy Texas' test for quantum meruit claims because the insurer did not directly benefit from the health systems' services, the Court found that "[w]hile it is true that the immediate beneficiaries of the medical services were the patients, and not [Insurer], that company did receive the benefit of having its obligations to its plan members ... discharged." *Id*. at 461. The Court further reasoned that "these discharges were furnished for the benefit of [the insurer], which enjoyed them and accepted them, and [the insurer] even acknowledged as much when it tendered payment for them at a rate it deemed to be proper." *Id*. at 462. Here, Bright received a benefit by having its contractual and legal obligations to provide medical services to its members discharged by SSM providing care to Bright's members. And like the insurer in the *El Paso Healthcare System* case, Bright acknowledged the material benefit it received from SSM when it tendered partial payment for said services.

11

Numerous courts have reached the same conclusion as the *El Paso System* Court by affirming quasi-contractual claims by providers. *See Appalachian Reg'l Healthcare v. Coventry Health and Life Ins. Co.*, No. 5:12-cv-114, 2013 WL 1314154, at *6 (E.D.Ky. Mar. 28, 2013) (finding that a Medicaid Managed Care Contractor was unjustly enriched by an out-of-network hospital providing services to its members); *River Park Hosp., Inc.*, 173 S.W.3d at 59 (discussed above in more detail; affirming that a contract implied-in-law exists requiring quantum meruit payment when a provider is forced to treat a patient under EMTALA and the insurer is required to pay for the emergency services of its enrollees).

Notably, a Pennsylvania court in *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, found that the defendant insurer "retained a benefit in this instance because it did not pay reasonable value for the services rendered" after a plaintiff hospital claimed the insurer underpaid them for out-of-network services rendered to their enrollees. 832 A.2d 501, 507 (Pa.Super. 2003). In doing so, the Court noted,

> The Hospital was compelled under federal law to provide services to individuals covered under the [Pennsylvania Medicaid managed care program]; conversely, [the insurer] did not have the ability to prevent its members from seeking emergency treatment at the Hospital. As a result, the parties virtually were compelled to operate in this manner; equitable principles are therefore particularly appropriate to apply. *Id*.

The chief case that Bright relies on to support its contention that SSM's claim for quantum meruit should fail as matter of law reasons that emergency care physicians do not provide treatment for the benefit of an insurance company and, in fact, may not know anything about a patient's insurance status. *See* Motion to Dismiss at 8-9 (citing *Texas*

12

*Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 437 (Tex. 2023)).

In sum, Bright contends that the insurance company provides financial reimbursement for health care services, not the health care services themselves and thus does not benefit from SSM's actions. But Bright ignores the fact that it is indeed receiving a material benefit from SSM in the form of both its members receiving the healthcare services that Bright is required to provide for and then not paying a reasonable value for the services rendered to its members. *See Temple Univ. Hosp., Inc.*, 832 A.2d at 507. Moreover, as reasoned by the *El Paso Healthcare System* Court, "Indeed, [the insurer's] very reason for existence is to ensure that such services are provided to plan members; seeing this core obligation fulfilled is hardly incidental." *El Paso Healthcare Sys., Ltd.*, 683 F.Supp.2d at 461.

In short, the authority recognizing a provider's right to pursue quantum meruit claims against insurers where the provider has provided something of value to both the insurers' member and the insurer itself are more analogous, better reasoned and should be followed here. Thus, this Court should not dismiss SSM's quantum meruit claim as a matter of law. *See Twombly*, 550 U.S. at 550; *Davis*, 554 F.3d at 1256.

**C.     The Express Contract Bar is Inapplicable in this Case.**

After conceding that this matter concerns payment for services over which there is no contract, Bright cites the patients' insurance plans with Bright as contracts that would preclude SSM's quantum meruit and breach of implied-in-fact contract claims. Motion to Dismiss at 2, 5, 9. Bright cites to *ACS Primary Care Physicians Southwest, P.A. v. United Healthcare Ins. Co.* from the Eastern District of Texas for this proposition, while

13

ignoring case law from the Western District of Oklahoma that found the exact opposite. In *Emergency Services of Oklahoma, PC v. Aetna Health*, plaintiff providers sought additional reimbursement against an insurer for allegedly being underpaid after rendering emergency services to the insurer's members on an out-of-network basis. 580 F. Supp. 3d 1032, 1034 (W.D. OK 2022). Interestingly, the insurer filed counterclaims against the providers under a quantum meruit theory asserting that the providers had been overpaid. In response, the plaintiff providers claimed that the insurer's counterclaims were barred since the plan documents could be construed as express contracts. *Id*. at 1038. The Court held that "though the plan documents may set forth [the Insurer's] obligations to their members to reimburse [the Providers] for medical treatment provided to said members, the plan documents do not represent an agreement between [the Providers] and [the Insurer] so as to preclude [the Insurer's] quasi-contractual counterclaims." *Id*. at 1038 (citing *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997)). The same is true here.

*Emergency Services of Oklahoma, PC* is persuasive authority from **this** jurisdiction that speaks to the precise issue of the express contract bar in relation to plan documents, unlike *ACS Primary Care Physicians Southwest, P.A.* cited by Bright, which is from a jurisdiction outside of Oklahoma and illogically holds a party liable for an express contract it never agreed to. *See ACS Primary Care Physicians Southwest, P.A. v. United Healthcare Ins. Co.*, 514 F. Supp. 3d 927, 935 (S.D. Tex. 2021) Accordingly, the Court should not dismiss SSM's claims as a matter of law.

### D. Alternatively, this Court should Grant the Plaintiff Leave to Amend the Complaint.

To the extent that this Court finds that there is any defect in Plaintiff's Complaint (which there is not), this Court should grant the Plaintiff leave to amend the Complaint. Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." This Circuit has found that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Here, Bright has not made any showing that there is a legal bar to any aspect of SSM's Complaint that would make amendment futile. Additionally, there would be no undue prejudice or delay in allowing such an amendment. Accordingly, to the extent that this Court finds that there is any defect in SSM's Complaint (which it should not), SSM respectfully requests that this Court grant SSM leave to amend the Complaint.

### IV. CONCLUSION

SSM's factual allegations exceed the standard for surviving a motion to dismiss under Rule 12(b)(6), and Bright's arguments for dismissal as a matter of law are without merit. Accordingly, SSM respectfully requests that this Court deny Bright's Motion to Dismiss and direct that Bright file an answer to the Complaint without further delay.

Respectfully submitted,

*s/Daniel G. Webber, Jr.*
Daniel G. Webber, Jr., OBA #16332
Patrick R. Pearce, Jr., OBA #18802
**RYAN WHALEY**

400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
dwebber@ryanwhaley.com
rpearce@ryanwhaley.com

Amanda L. Hayes-Kibreab
*Pro Hac Vice*
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
(213) 443-4355
(213) 443-4310 FAX
ahayes-kibreab@kslaw.com

Amy Lynn O'Neill
*Pro Hac Vice*
King & Spalding LLP
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
(916) 321-4800
(916) 321-4900 FAX
aoneill@kslaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*s/Daniel G. Webber, Jr.*
Daniel G. Webber, Jr.
