## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SSM HEALTHCARE OKLAHOMA, INC.,    )
an Oklahoma Not-For-Profit Corporation,    )
                               )
    Plaintiff,    )
                               )
v.    )    Case No. CIV-23-305-SLP
                               )
BRIGHT HEALTH INSURANCE    )
COMPANY, a Foreign Corporation,    )
                               )
    Defendant.    )

## O R D E R

Before the Court is Defendant Bright Health Insurance Company's Motion to Dismiss [Doc. No. 13]. Plaintiff SSM Healthcare of Oklahoma, Inc. has responded [Doc. No. 16]. Defendant did not reply, and the time to do so has passed.

## I.    Background[1]

SSM is a healthcare provider based in Oklahoma City that operates medical facilities throughout Oklahoma. Bright is a Colorado health insurance company that was licensed in Oklahoma and listed on the Affordable Care Act (ACA) exchange. SSM provided various medical services to Bright's members at facilities in and around Oklahoma City. Bright left the Oklahoma health insurance market around December 31, 2022. SSM contends Bright owes it $13 million for unpaid medical services provided to more than 2,500 of Bright's members prior to its exit from the Oklahoma market. SSM

---

[1] The Court accepts all well-pleaded factual allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. *See Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1102 (10th Cir. 2019).

was not a "network" provider that had a contract with Bright for discounted hospital billing charges. SSM therefore contends Bright owes its full "charge description master rates" or "chargemaster rates."

Since there was no written agreement between the parties, SSM asserts claims for breaches of implied contracts: one for a constructive contract (also known as a "quasi contract" or a contract "implied-by-law") associated with emergency services it provided, and another for a contract implied-in-fact (i.e., by conduct) associated with inpatient and outpatient services it provided. SSM also assets a quantum meruit claim, contending it provided valuable services to Bright's members with a reasonable expectation of being compensated. Bright moves to dismiss all three claims.

## II.    Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). While the complaint need not contain "detailed factual allegations," it must include "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to avoid dismissal. *Twombly*, 550 U.S. at 555. The Court accepts all well-pleaded allegations as true, views those allegations in the light most favorable to the non-moving

party, and draws all reasonable inferences in the non-moving party's favor. *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

III.    **Analysis**

Under Oklahoma law, a contract can either be express or implied. *See* 15 Okla. Stat. § 131.[2] Oklahoma courts distinguish between an "implied contract" which "involves an implication of fact in contrast with a quasi or constructive contract involving an implication of law." *Jones v. Univ. of Cent. Okla.*, 910 P.2d 987, 989 n. 1 (Okla. 1995) (citing *Conkling's Estate v. Champlin*, 141 P.2d 569, 570 (Okla. 1943)); *see also T & S Inv. Co. v. Coury*, 593 P.2d 503, 504 (Okla. 1979) (explaining the difference between "implied-in-fact contracts" and "quasi contracts, which are commonly referred to as 'implied-in-law' or 'constructive' contracts").

An implied contract "involves a fact legitimately inferred," and arises where "the conduct of the parties suggests the agreement that, in fairness, they ought to have made." *Jones*, 910 P.2d at 989 & n. 1; *see also* 15 Okla. Stat. § 133. An implied contract "exist[s] where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract." *Jones*, 910 P.2d at 989. In determining whether an implied contract exists, courts consider:

> (a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract.

---

[2] Both parties rely on Oklahoma law, so the Court does the same. *See Union Standard Ins. Co. v. Hobbs Rental Co.*, 566 F.3d 950, 952 (10th Cir. 2009).

*Dixon v. Bhuiyan*, 10 P.3d 888, 891 (Okla. 2000).

A constructive contract, on the other hand, is a "mere fiction, imposed to adapt the case to a given remedy."[3] *Jones*, 910 P.2d at 989 n. 1. For a constructive contract, the intention of the parties is disregarded, and a party's legal "duty defines the contract." *Id.*; *see also Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) ("an agreement implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty[.]" (citation omitted)).

Finally, a quantum meruit claim is "grounded on a promise that the defendant would pay to the plaintiff [for his services] as much as he should deserve." *Martin v. Buckman*, 883 P.2d 185, 193–94 (Okla. Ct. App. 1994) (quotation and italics omitted); *Brown v. Wrightsman*, 51 P.2d 761, 763 (Okla. 1935) (explaining quantum meruit arises "[w]here a person performs services without a written contract" and "the law implies an agreement to pay what is reasonable, meaning thereby what he reasonably deserves."). The Court addresses each claim in turn.

## A. Constructive Contract Claim

SSM's claim for a constructive contract is based in part on the statutory duty of hospitals under federal law to provide emergency services to all individuals who present themselves regardless of whether they are insured or otherwise able to pay.[4] SSM further

---

[3] The Court uses the term "constructive contract" to avoid any confusion with contracts implied by conduct.

[4] The relevant federal law is the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd.

contends that the Affordable Care Act imposes a legal obligation on insurers to cover emergency services at non-contracted hospitals like SSM.  By virtue of these legal obligations, SSM contends there was a constructive contract whereby Bright had an obligation to pay SSM the reasonable value of emergency services it provided.

Bright's argument for dismissal of the constructive contract claim is undeveloped and cites no authority in support.  *See* Mot. [Doc. No. 13] at 6-7.  Bright primarily contends the duty for insurers to cover out-of-network emergency room visits under the Affordable Care Act merely requires it to include that coverage in its plan but does not create a constructive contract between insurers and providers.  *See id.*  Bright fails to acknowledge, however, that the requirement to cover out-of-network emergency room visits necessarily means it had a legal duty to its insureds to pay providers like SSM.  As such, the practical effect of Bright's legal duty to cover out-of-network emergency room visits is that it must pay emergency room providers like SSM for the services rendered.  Accordingly, SSM has stated a cognizable claim for breach of a constructive contract, and Bright's Motion is DENIED on this issue.[5]

---

[5] Bright also asserts the ACA does not require it to pay out-of-network providers their full "chargemaster" rates.  [Doc. No. 13] at 6-7.  Bright does not cite any provision of the ACA or other authority in support of this argument.  *See id.*  In any event, this issue goes to calculation of damages if SSM were to prevail on its constructive contract claim, rather than a question as to whether the claim itself is subject to dismissal.  *See Wildearth Guardians v. Lamar Utilities Bd.*, No. 1:09-CV-02974-DME, 2010 WL 3239242, at *6 (D. Colo. Aug. 13, 2010) (denying a motion to dismiss because it "goes only to the proper calculation of damages, and not to the sustainability at this stage of the pleadings of the underlying claim.").

**B. Implied Contract Claim**

SSM's implied contract claim centers on inpatient and outpatient services its hospitals provided to Bright's members. *See* Compl. [Doc. No. 1] at 6-7. SSM alleges Bright entered the insurance market and offered policies to its members, and SSM provided necessary services to Bright members at a reasonable rate, which is conduct that obligates insurers to pay for such services in the ordinary course of business. *Id.* at 2-3, 6.[6] SSM asserts Bright offered health insurance plans knowing some of its members would seek treatment in out-of-network facilities, and that SSM provided medical services to Bright's members in good faith reliance that Bright would pay for the services rendered. *See* [Doc. No. 16] at 9; *see also* Compl. [Doc. No. 1] at 6-7.

As with the constructive contract claim, Bright's argument for dismissal is conclusory and undeveloped. *See* [Doc. No. 13] at 4-5. Although it repeatedly contends SSM has failed to allege facts to support a claim for breach of an implied contract, Bright does not identify any particular requirement from *Davis* (or otherwise under Oklahoma law) for which the Complaint lacks factual allegations in support. *See id.* The Court cannot make that argument for Bright. *See C.P.C. v. Boulder Valley Sch. Dist. Re-2*, No. 122CV00564RMRSBP, 2023 WL 8831330, at *3 (D. Colo. Dec. 21, 2023) ("The Court is not obligated to perform legal research on behalf of [a party] . . . nor will the Court make arguments for [a party] that he himself has not raised."); *see also Lovato v. Mahler*, No. 121CV01986RMRMDB, 2023 WL 2613821, at *3 (D. Colo. Mar. 23, 2023) ("The Court

---

[6] SSM also alleges the ACA requires insurers to cover "essential health benefits" such as inpatient and outpatient services. *Id.*

will not make arguments for the parties, nor should the parties expect that the Court will

consider arguments that the parties could have made but did not.").  In any event, the Court

finds the allegations in the Complaint are sufficient to state a claim for breach of an implied

contract.[7]

Bright also contends there can be no implied contract where there is an express

contract on the same subject matter.  *See* [Doc. No. 13] at 5-6.  Although somewhat difficult

to discern, it appears the express contracts Bright refers to are the plans it had with its

insureds, under which it did cover inpatient and outpatient services.  *See id.* at 6.  Under

Oklahoma law, "[a]n express contract excludes the possibility of an implied contract of a

different or contradictory nature."  *Jones*, 910 P.2d at 990 (citing *Fox v. Cities Service Oil

Co.*, 200 P.2d 398, 400 (1948)).  But Bright fails to explain how the existence of contracts

between it and its insureds prevents there from being an implied contract between it and

another party like SSM.  *See Emergency Servs. of Oklahoma, PC v. Aetna Health, Inc.*, 580

F. Supp. 3d 1032, 1038 (W.D. Okla. 2022) ("[T]hough the plan documents may set forth

Defendants' obligations to their members to reimburse Plaintiffs for medical treatment

provided to said members, the plan documents do not represent an agreement between

Plaintiffs and Defendants so as to preclude Defendants' quasi-contractual [claims].").

Accordingly, Bright's Motion is DENIED as to the implied contract claim.

---

[7] The only specific argument Bright makes is that there are no "factual allegations supporting the notion that Bright manifested its agreement to pay SSM for its full chargemaster [rates]."  *See* [Doc. No. 13] at 5.  As such, Bright's argument focuses on the amounts SSM contends it is owed, rather than whether Bright owes anything in the first place.  Again, this issue relates only to measure of damages, not dismissal of the claim itself, and it is therefore not properly raised at this juncture.  *See Wildearth Guardians*, 2010 WL 3239242, at *6.

## C. Quantum Meruit

To set forth a claim of quantum meruit, a plaintiff must allege: "(1) Plaintiff rendered valuable services to Defendant with a reasonable expectation of being compensated, (2) Defendant knowingly accepted the benefit of the services, and (3) Defendant would be unfairly benefitted by the services if no compensation were paid to Plaintiff." *Big Hunt Media, Inc. v. Smith & Wesson Corp.*, No. CIV-18-299-R, 2018 WL 3625842, at *3 (W.D. Okla. July 30, 2018) (citing Vernon's Okla. Forms, OUJI-CIV 23.10 (2d ed.)); *Sholer v. State ex rel. Dep't of Pub. Safety*, 149 P.3d 1040, 1048 (Okla. Civ. App. 2006), *as corrected* (Mar. 8, 2006) (A quantum meruit claim arises where "a plaintiff renders valuable services benefitting a defendant under circumstances where the defendant was reasonably notified the plaintiff expected to be paid or where it would be unjust for the defendant to retain the benefit without paying."). Bright contends SSM fails to state a claim for quantum meruit because SSM does not allege it rendered services for the benefit of Bright, as opposed to Bright's plan members. [Doc. No. 13] at 7-9. The Court agrees.[8]

SSM's relevant factual allegation on this issue is as follows: "Bright derives a benefit from SSM's provision of services to Bright's members, because it is through SSM's provision of such services that Bright fulfills its obligations to its members." *See* Compl. [Doc. No. 1] at 7. SSM does not elaborate on this in the Complaint, but it maintains in its Response that Bright "received a benefit by having its contractual and legal obligations to

---

[8] Bright also maintains SSM's quantum meruit claim fails due to the existence of written health plans between it and its members which are the basis for any right SSM has to payment. *Id.* at 9-10. The Court need not decide that issue because it finds in favor of Bright on its first argument.

provide medical services to its members discharged by SSM providing care to Bright's

members." [Doc. No. 16] at 11.  This argument expressly conflates the parties' roles: while

Bright had an obligation to pay for covered medical services, it was not "obligat[ed] to

provide medical services to its members" as SSM asserts.  SSM has not explained how

Bright had an affirmative obligation to provide medical services that SSM somehow

"discharged."

SSM's argument boils down to the idea that Bright benefitted by getting an

opportunity to hold up its end of the insurance bargain when its members received

treatment by SSM.  *See* [Doc. No. 16] at 11-13.  But Bright having to pay medical bills is

inherently not a "benefit" to Bright—it is an obligation.  Accordingly, as it pertains to

SSM's allegation in this case, the Court agrees with the more recent trend of persuasive

authority cited by Bright that "[i]t is counterintuitive to say that services provided to an

insured are also provided to its insurer. The insurance company derives no benefit from

those services; indeed, what the insurance company gets is a ripened obligation to pay

money to the insured—which hardly can be called a benefit."  *MC1 Healthcare, Inc. v.*

*United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *11 (D. Conn.

May 7, 2019), *on reconsideration in part*, No. 3:17-CV-01909 (KAD), 2019 WL 3202965

(D. Conn. July 16, 2019) (collecting cases and observing "courts have repeatedly held that

providers cannot bring unjust enrichment claims against insurance companies based on the

services rendered to insureds." (citations omitted)).[9]  In reaching this decision, the Court

---

[9] SSM also argues Bright received a "benefit" by "not paying a reasonable value for the services rendered to its members." [Doc. No. 16] at 13.  But this argument is conclusory and still does not

notes that the quantum meruit claim is duplicative of the claims for constructive contract

and implied contract discussed above for which SSM has stated plausible claims for relief.

For all these reasons, Bright's Motion is GRANTED as to the quantum meruit claim.

## D. Leave to Amend

At the conclusion of its Response, SSM requests leave to amend its Complaint "[t]o

the extent that this Court finds that there is any defect" therein. [Doc. No. 16] at 15. SSM

does not explain what it believes it would clarify or add to an amended complaint with

regard to its quantum meruit claim. This failure to supply any particularity defeats SSM's

request to amend. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir.

2021) ("[A]ny request for a court order, such as a request for leave to amend, must state

with particularity the grounds for the order."). SSM has not filed a formal motion

requesting leave to amend, and "bare requests for leave to amend do not rise to the status

of a motion and do not put the issue before the district court." *Id.* Nor has SSM complied

with this Court's Local Rule governing amendment pursuant to Federal Rule of Civil

Procedure 15(a)(2). *See* LCvR 15.1.[10] Under these circumstances, SSM has failed to

provide sufficient notice of the basis for amendment. *See Albers v. Bd. of Cty. Comm'rs*

*of Jefferson Cty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014) ("[A] bare request to amend in

response to a motion to dismiss is insufficient to place the court and opposing parties on

---

relate to a service SSM performed for Bright itself, or to Bright's benefit. If anything, it appears
the benefit Bright gets in that scenario is one provided by its members: retention of their premiums.

[10] Any amendment is governed by Rule 15(a)(2), as SSM did not amend as a matter of course.

notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based.").

## IV.    **Conclusion**

IT IS THEREFORE ORDERED that Bright's Motion to Dismiss [Doc. No. 13] is GRANTED in PART and DENIED in PART as set forth above.

IT IS SO ORDERED this 31st day of March, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE